## Seneca D. Kimbark v. Illinois Car & Equipment Co.

1. CONTRACTS—*Acceptance of Proposition with Modifications.*—An acceptance of a proposition with modifications constitutes in law a rejection of it, and the substitution in its place of a new proposition, which, to constitute a contract, must itself be accepted by the other party.

2. WORDS AND PHRASES—*Acceptance Defined.*—An acceptance is defined as follows : " In commerce, an engagement by the person on whom a bill of exchange is drawn to pay the bill; usually made by the person writing the word ' acceptance' across the bill and signing his name or simply writing his name across or at the end of the bill." Century Dictionary.

3. EVIDENCE—*Conversation over a Telephone.*—Evidence of a conversation over a telephone between the plaintiff and a person in defendant's office is inadmissible in the absence of proof of the identity of the person.

**Trespass on the Case,** upon promises. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON. Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed October 24, 1902.

Statement.—This is an action by the Illinois Car & Equipment Company, dealers in iron, for merchandise sold and delivered to appellant, to the amount of $2,636.79. A plea of the general issue, withdrawn before the trial, and pleas of set-off, were filed. The pleas of set-off set up an alleged contract between appellee and appellant as follows:

"CHICAGO, May 22, 1899.

MR. S. D. KIMBARK, Michigan Avenue, Chicago.

DEAR SIR: We are pleased to quote you on 300 tons of bar iron, up to and including 8-in. wide, a price of $1.60 per hundred pounds, half extras, f. o. b. Chicago, for delivery during the months of June and July. Terms sixty days acceptance, you to furnish us specifications previous to May 30th. The acceptance of this proposition will constitute contract between us.

Yours truly,
J. M. MARIS,
General Manager."

"Accepted, with the understanding that 150 tons are to be specified for by May 30th, balance to be specified for before June 30th.

S. D. KIMBARK,
By W. B. MITCHELL."

The pleas state a breach of the contract in that the appellee failed to deliver part of the iron, and ask damages in the sum of $5,000. Appellant in each of the pleas of set-off alleged a full performance on his part as to the specifications for 150 tons of iron by May 30, 1899, and 150 tons by June 30, 1899, and that the appellant always stood ready and willing to accept the said goods and to give an acceptance or acceptances for the same in accordance with the contract.

It was stipulated between the parties, that the defendant, Kimbark, received from the plaintiff company iron as follows, which was all that was delivered to him by the plaintiff company:

Aug. 14, 1899, 20,125 lbs., at $1.60 per cwt......$ 322.00
"      "      "   40,010 "    "   1.70 "      "    ......   680.17
"      "      "   34,760 "    "   1.60 "      "    ......   556.16
Sept. 6,    "   66,300 "    "   1.60–1.65 per cwt...  1,078.46

It is also agreed that the price charged therefor amounted in all to two thousand six hundred thirty-six and 79-100 dollars ($2,636.79); that this charge is correct; that no part of said price or amount has been paid, and that the iron was delivered to the defendant, Kimbark, without demand or request for any promissory note, bill of exchange or acceptance at the time of such delivery, and that the defendant, Kimbark, has not offered or given the plaintiff company any such note, bill of exchange or acceptance. The amount of iron actually delivered at any time as above stated amounted in the aggregate to a fraction over eighty tons.

It appears that the first negotiations between the parties took place early in 1899, when one Johnston, a clerk in the employ of a broker dealing in iron, had some conversation with appellant's agent relating to the sale of iron by the appellee, resulting in the delivery to appellant's agent of the written proposition signed by appellee, which constitutes the first part of the alleged contract as above set forth. Objection having been made by appellant's agent to that clause in the proposition requiring the specifications for the whole 300 tons to be furnished previous to May 30th, Johnston testifies that he called up appellee's office by telephone, and received, as he supposed, authority to allow appellant to extend the time in which appellant was required to furnish specifications for half of the iron from May 30th to June 30th. This modification was accordingly included in the written acceptance of the proposition appended thereto, and signed in duplicate, in appellant's name, by his agent. One copy was retained by appellant and the other delivered at appellee's office.

Appellant claims to have furnished the specifications for 150 tons of the iron during the month of May, and he subsequently sent in specifications for the remainder of the 300 tons and more, during the month of June. When the June specifications were sent in, appellee, claiming that its attention had not before been called to the modified acceptance of appellant and that it had never authorized

or assented thereto, wrote the latter, refusing to fill June orders, and stating that appellant was not entitled to any iron except such as had been specified in May, according to appellee's original proposition. Meanwhile the price of iron had risen " from $1.60 per hundred pounds" to $1.85 or $1.90, and according to some of the testimony it went up as high as $2.90 in September and October following.

None of the 150 tons of iron alleged to have been specified for in May, was delivered by appellee during the months of June and July as provided in the original proposition, but as shown by the stipulation above referred to, the eighty tons and over, which was delivered, was furnished in August and September following. Payment for this was not requested until on or about September 30th, when a bill was sent to appellant charging for the iron so delivered at the price provided in the original written proposition.

Appellant claims that his modified acceptance of appellee's original proposition was assented to and acted upon by appellee and constituted a contract, in accordance with which appellee was bound to furnish him the whole three hundred tons of iron, on the June as well as the May specifications. He refused, therefore, to pay for the iron, over eighty tons of which had been delivered to him, and claims that he was damaged in a sum larger than the amount due appellee for what he had received, by appellee's failure to deliver the whole 300 tons. When the controversy over payment of that bill arose, a car load of iron had been shipped by appellee to appellant which, however, was then stopped in transit, and has never been delivered.

The court instructed the jury that unless they allowed appellant's claim of set-off, their verdict should be for $2,822.54 in favor of appellee. They returned a verdict, however, for $2,162.54, upon which judgment was entered, from which this appeal is prosecuted. Appellant insists the amount of the verdict discloses that the jury found the issues in his favor and allowed his claim of set-off, but that in obedience to instructions claimed to be erroneous, he was allowed a sum much less than he is entitled to recover.

Blewett Lee, attorney for appellant.

McCordic & Sheriff, attorneys for appellee.

Mr. Presiding Justice Freeman delivered the opinion of the court.

It is first insisted by appellant's attorney that the writing consisting of appellee's written proposition of May 22, 1899, and appellant's modified acceptance thereof, constituted a contract binding upon the parties. This appellee denies. Appellant's acceptance was coupled with a modification whereby he sought to obtain thirty days additional time, from May 30th to June 30th, in which to specify for half of the 300 tons of iron; and this condition offered a new and counter proposition, which, in order to constitute a contract, required to be in its turn accepted by appellee. The rule is stated in Anglo Am. Prov. Co. v. Prentiss, 157 Ill. 506–514, as follows: "An acceptance of a proposition with modifications, constitutes in law a rejection of it, and the substitution in its place of a new proposition, which, to constitute a contract, must itself be accepted by the other party." That there was ever in this case any express acceptance of appellant's modification by appellee is not asserted. It is, however, urged by appellant's counsel that acceptance must be implied from appellee's conduct, and that the evidence warranted the jury in so finding.

The evidence chiefly relied upon to sustain appellant's claim that appellee accepted the modification, and that it became thereby a contract and binding upon the parties, is, first, a telephone conversation alleged to have taken place between one Johnston, a clerk in the employ of appellee's broker, who had been sent to appellant with appellee's original proposition of May 22, 1899; second, the retention by appellee of the writing as modified, without objection, for seventeen days after it was returned, and until appellant's June specification began to come in and the market price of the iron had gone up; third, recognition of the instrument as a "contract" in appellee's correspondence, and a partial compliance therewith by delivery of a part of the iron to appellant at the contract price.

The telephone conversation was introduced for the purpose of showing authority from appellee to its alleged agent to consent in its behalf to the modification before it was made.   The testimony of Johnston tends to show that he was sent by the broker who employed him, with appellee's letter of May 22d, to appellant's office; that he was told by Kimbark's representative that the clause requiring the whole 300 tons to be specified " previous to May 30th " was unsatisfactory; that he then called up appellee's office by telephone and asked for Mr. Maris, appellee's general manager; that Mr. Maris came, as he supposed, to the 'phone, and Johnston reported Kimbark's objection, and that the latter desired to specify half the iron at once, and to have until June 30th to specify the remainder; that he was asked in reply if Kimbark could give the specifications for the last half by June 15th, to which Johnston answered he could not say, but would try; that the speaker at the other end . of the 'phone then said, " Do the best you can with it, Mr. Johnston; " and that the contract was then accepted and signed by Kimbark, with the modification in question. Johnston did not know Mr. Maris' voice.   He did not, therefore, and does not know whether this telephone conversation was in fact held with the latter or not.   This evidence is of no value, therefore, as proof of authority to Johnston to consent to the modification made by Kimbark, in the absence of any proof that the person with whom he claims to have talked over the telephone wire had authority to act for appellee.   This testimony was admitted in evidence over appellee's objection.   It may be conceded to be as admissible as would be a similar conversation held with an unknown clerk at appellee's place of business.   It merely tends to show that such a conversation was held with some one at appellee's office.   As tending to show, however, that the speaker at the other end of the telephone was Mr. Maris, as Johnston supposed he was, we regard the evidence as inadmissible in accordance with the views expressed in J. Obermann Brew. Co. v. Adams, 35 Ill. App. 540.   It may be said, however, that if the conversation be

deemed competent, it discloses no express authority to Johnston to consent to Kimbark's modification. " Do the best you can Mr. Johnston," is at most ambiguous, and falls far short of authorizing acceptance of a new proposition. It may mean as well, " Do the best you can to secure acceptance of the written proposition as submitted." Mr. Maris denies that he had any such conversation with Johnston over the telephone or otherwise, and states that he left his office about half past two or three o'clock that afternoon and left the city that evening, and that he had no intimation of any modification in his original proposition until his return, about June 10th.

It is urged, in the second place, the fact that appellee retained the modified contract for seventeen days after it was returned, and until June 9th, without objection to Kimbark's counter proposition, is evidence of acceptance by appellee. There is evidence tending to show that appellee's broker, to whom Johnston returned the paper after its modification and execution by Kimbark, discovered the modification the next day, May 23d. It does not appear that the broker had authority to consent to any change in the written proposition, or to do more than present it to Kimbark and return it to appellee when accepted or rejected. He did take a copy of it back to appellee's office and delivered it to some one of appellee's employes, but to whom he does not remember. So far as appears he did not call any one's attention to the proposed modification. Orders for the iron, duly specified, began to come in from appellant immediately. Twelve such orders, covering, according to appellant's claim, about 150 tons of the iron, were sent in during the remainder of the month of May, and received by appellee without objection. It was when June specifications first began to go in that appellee first objected to the modification. Upon that date, June 9th, the price of the iron having meantime materially gone up, appellee acknowledged the receipt of an order of June 6th as follows: " We have your order of June 6th for two bars of 2 x 1⅛ iron, but will be unable to include this in our order, as according to our contract

with you we do not accept any orders after June 1st." The letter concludes with a statement that the time of delivery of the iron previously ordered was dependent upon the mill, but that appellee would try to get it as soon as possible. June 12th appellee reiterated its refusal to accept June orders and wrote as follows: " In looking up the contract which was signed by Mr. J. M. Maris, our general manager, on May 22d, I find that you made an addition to it after being signed by Mr. Maris, that ' 150 tons were to be specified by May 30th, and the balance before June 30th.' This was never confirmed by us, and of course we decline to accept any such modification of the original proposition. With this in mind, we decline to accept any order that you have sent or may send after May 30th." To this Kimbark, the next day, replied : " On examination of our contract you will note that 150 tons are to be specified in May, the balance before June 30th. Therefore ask you to go ahead on the specifications we have sent you. Will send you additional specifications during the month." The positions thus taken appear to have been consistently maintained thereafter by both parties. There was considerable correspondence, the tenor of which is sufficiently indicated by two or three extracts. June 23d appellee wrote returning appellant's June specifications, and saying : " According to our interpretation of the contract to furnish you bar iron, you have specified for all that was due you." June 26th appellee again writes as follows : " The additional clause which was added to your acceptance of the original contract was never confirmed by us and was repudiated as soon as discovered." Appellant replied the same date : "Before placing contract with your representative we arranged for part of the specifications to be furnished in June. It is now too late to bring up this question, and we must insist upon you filling the whole order." To this letter appellee replied in part as follows, under date of June 27th : " Our proposition to you was made with reference to your furnishing the specifications in May, and we had no idea or notion of giving you any further time; in fact it would be

impossible for us to have made such a contract and we can not furnish you the iron on any such understanding. We herewith return specifications." The specifications so returned were June specifications. The rest of the correspondence relates chiefly to shipment of the May orders. July 3d Kimbark wrote threatening to buy elsewhere, "and charge you with the difference in price," if some of the iron ordered was not more promptly shipped. Whether appellant's proposed modification was discovered at all by any one in appellant's office until the June specifications began to come in, or until the return of the general manager, does not definitely appear from the evidence. Apparently it was not. It is true that Kimbark's May specifications had been coming in, but if appellee was meanwhile under the impression that Kimbark had accepted its proposition of May 22d unconditionally, the receipt of these May orders would not call attention to any proposed modification. Mr. Maris, appellee's general manager, states that he knew nothing of Kimbark's counter proposition until his return from the south about June 10th, and that he then immediately notified appellant by telephone and letter that it was rejected.

The retention of the paper after its return from Kimbark, appellee meanwhile supposing that Kimbark had accepted the original proposition, and ignorant of the fact that instead he had inserted therein a counter proposition, would not indicate an intention to accept such counter proposition. It was at once rejected, as soon as appellant sent in his first June specifications. So far as appears, the receipt of these June specifications was the first intimation to appellee of Kimbark's proposed modification of the original instrument. Appellant seeks to establish affirmatively his right to set-off, on the alleged ground that there was an implied acceptance of his counter proposition. To do this the burden is on him to make proof of facts from which appellee's acceptance can be reasonably implied. The paper containing the proposed modification was retained, so far as appears, without examination by appellee, and without objection for seventeen days, during which time,

Kimbark v. Illinois Car & Equipment Co.

however, nothing had apparently occurred to call attention to the change proposed by Kimbark. This does not nec- essarily imply an intention to accept such change. To raise such an implication it must appear that appellee knew or had some sufficient reason to put it on inquiry to ascertain that the paper contained a counter proposition which appellant supposed had been accepted, and was act- ing upon. There is no evidence to that effect. The ac- ceptance and subsequent fulfillment of the May orders implied, under the circumstances, no intention to accept orders to be specified in June. As to the June specifica- tions appellee was not silent. It repudiated them at once, as soon as they were sent in. Appellee had the right to pay no attention to appellant's counter proposition if it chose so to do; and upon being advised of its existence, might have treated it as a refusal of the original offer and dropped the whole matter. Had it done so, no acceptance could be predicated upon its inaction. Delay in giving a reply could not of itself create a contract out of a mere proposal. Appellee had the right to refuse to reply at all. Only a positive act of acceptance, or an act clearly imply- ing acceptance could develop a mere counter proposition into a contract obligation, and no such act is in evidence. No acceptance of the counter proposition can be predi- cated upon appellee's acceptance of May orders in igno- rance of the counter proposition, and believing such orders to be sent pursuant to the original offer. It is true that appellee had the paper in its possession and might have known by examining it what the real facts were. But it must also be said that without any intimation that it con- tained a counter proposition there was no apparent reason for examining it. If the original offer was accepted appellee had nothing to do thereunder but wait for Kim- bark's specifications to come in. They did come in, and containing no intimation of any modification, were accepted and treated as in accord with the original proposition for iron to be specified in May only. Appellee went ahead and undertook in apparent good faith to fill these May

orders for appellant, which it had thus accepted, although
it had been under none but an imaginary obligation to ac-
cept them in the first instance, after Kimbark's refusal of
the offer as originally made.

We are referred by appellant's counsel to Tilt v. LaSalle
Silk Mfg. Co., 5 Daly (N. Y.) 19, and Robertson v. Tapley,
48 Mo. App. 239. The first of these was a case where a
proposed contract was approved by the second party with
a modification appended that inability to deliver the goods
mentioned in the contract within the time therein specified
should not be made a pretext for refusing to receive them
upon arrival. The contract with the appended modification
was returned to the office of the party of the first part and
left there. Subsequently the said first party did receive
and pay for some of the goods without objection, after the
date specified for delivery in the original form of the con-
tract. It was held that this was "a circumstance fully
warranting the finding of the judge that the defendants
had assented to the modification made by the plaintiffs."
In Robertson v. Tapley an additional clause was inserted
by the plaintiff after the contract had been signed by the
defendant. One of the originals containing such addition
was mailed to the defendant. The court said: "A propo-
sition becomes a contract only when the party receiving it
communicates, either actually or constructively, his accept-
ance to the other contracting party. Express notice of
acceptance is dispensed with, when apparently not contem-
plated; but in such case the acceptance must be clearly
manifested by some other act. The burden of showing this
is on the party seeking to obtain the benefits of the con-
tract." It was held that the admission of the defendant
that he had received the amended instrument through the
mails, authorized the jury to draw the inference that he
had read it, and furnished sufficient evidence of acceptance
to carry the question of the jury, and that "the defendant's
subsequent conduct in treating the plaintiff as a sub-con-
tractor was evidence of acceptance on his part." In neither
of these cases is it suggested that the mere retention of the

modified instrument was evidence of acceptance of the modification. In each case in the absence of express notice of acceptance, it was thought to "be clearly manifested by some other act." In the one case payment was made for goods accepted in accordance with the modification, and in the other, receipt of the modified instrument through the mails, and subsequent conduct in affirmance of the modified contract were regarded as evidence of acceptance. The evidence in the case at bar, however, does not warrant such a conclusion.

It is urged in the third place that appellee indicated its acceptance of the modification by recognizing the paper as a contract in its correspondence, and by delivering some iron, after the modification had been called to its attention. Reference is made to the letter of June 23d, already quoted in part, wherein appellee speaks of "our interpretation of the contract to furnish you bar iron." There seems to be no doubt that appellee did regard itself as bound to accept appellee's orders for such iron as was specified in May under its original proposition. In this it was mistaken, since that proposition was not accepted by appellant, and there was no such contract as appellee had originally proposed. It can not, however, be presumed that appellee, in the letter referred to, intended to express its recognition of the modified instrument as a contract between the parties, for in the same correspondence it was expressly repudiating such recognition in express terms.

Nor can the shipment and delivery of part of the iron called for by appellant's May specifications be regarded under the circumstances in evidence as proof of an acceptance by appellee of the terms of the counter proposition. Appellant was expressly notified June 9th, and before any such shipments were made, that appellee would not accept orders for iron specified after June 1st; that it declined to accept "any order that you have sent or may send us after May 30th." There is no room, therefore, for any implication by reason of appellant's shipment of iron ordered in May, that it was done in compliance with the modified or

counter proposition. It was expressly stated not to be so done.

The same is true as to the charge of the contract price for the iron ordered in May and in part delivered. It was done after and with an express repudiation of the counter proposition and can not be construed as evidence of appellee's acceptance thereof. It tends to show that the May orders were accepted upon the terms of the original offer.

There having been, therefore, no acceptance by either party of the written proposition made by each respectively, no written contract existed between them. There was, however, a contract of purchase and sale subsequently created by appellee's acceptance of Kimbark's May orders and specifications, followed by partial delivery, and Kimbark's acceptance of iron so delivered with full knowledge that it was not delivered under his counter proposition; and the question to be determined is, what are the rights and obligations thereunder, of the respective parties.

The failure to examine the paper containing the original proposition, after it was returned from Kimbark, may have been unbusiness-like, but can be accounted for in part by the absence of the general manager who had submitted the original proposition, and by the fact that the May specifications sent in by Kimbark were in no respect different, unless in quantity, from what they would have been had he accepted that proposition unconditionally. Kimbark's proposed modification did not affect the terms or conditions upon which appellee had offered him the iron if specified in May. It sought appellee's consent that a part of the iron offered might be specified in June; but it made no change in the terms of the original proposition for May orders, except as to quantity. Without waiting to ascertain whether this condition would be accepted, Kimbark at once went ahead sending in May orders, about which there was no dispute or difference, and appellee accepted them, although not obliged to do so. Both Kimbark's orders and appellee's acceptances were sent and received upon the terms and conditions stated in the written instrument, one

party apparently having in mind only the original proposition, while the other had in mind the original proposition as to half the iron and the counter proposition as to the remaining half. Nevertheless appellant accepted the iron which was delivered, after he knew that appellee had repudiated the counter proposition and was intending to deliver only such iron as had been ordered and specified in May. He insisted, as he does now, that appellee ought to accept and comply with his counter proposition, but he knew that appellee had refused and did not intend to do anything of the kind, and was delivering iron in fulfillment of the May orders only. In accepting it, appellant accepted the terms upon which it was delivered, viz., in fulfillment of May orders only. The new contract, therefore, between the parties, was in effect a purchase and sale of so much iron as appellant ordered and specified in May, upon the terms and conditions of appellee's original proposition, and as to that iron, the rights and obligations of the parties must be determined by that proposition.

It has been argued in behalf of appellant, and an instruction was given to the same effect, that the refusal of appellee, June 9th and thereafter, to accept June specifications and deliver the iron in accordance therewith, was a repudiation of a contract; citing Kadish v. Young, 108 Ill. 170-183; Roebling's Sons Co. v. Lock Stitch Fence Co., 130 Ill. 660; L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59, and others. These cases are to the effect that one party to a contract can not, by giving notice of his intention not to perform, create a breach and compel the other party to rescind before the time fixed for final performance, and so relieve himself from damages which his failure to perform may inflict upon the other party after such notice and before the time fixed for performance by the terms of the contract. This presupposes the existence of such a contract. But in the case before us there was no meeting of the minds of the parties upon appellant's counter proposition for June orders, and no contract obliging appellee to accept June specifications.

It remains to consider different views advanced by coun-

sel as to the meaning of certain expressions used in the orig-
inal proposition, by which proposition, as we have said, the
rights and obligations of the parties with reference to the
sale and purchase of the May iron must be determined. By
the terms of that proposition the iron so sold was to be
delivered by the end of July. None of it was so delivered.
By the acceptance, without objection, of so much of it as
was subsequently delivered, appellant waived objection on
that ground as to the iron so delivered. Whatever damage
he suffered by appellee's failure to deliver the remainder of
the May orders, was incurred at that date, July 31st. The
measure of damages, if any, is the difference between the
market price, August 1st, of the iron undelivered, and the
contract price. If after that date appellee continued to
promise delivery, and appellant acquiesced, relying on such
promises, the date of appellee's final refusal might become
the time at which appellant's damages should be estimated.
Summers v. Hibbard, 153 Ill. 102–111. This depends on the
facts, and is to be determined from the evidence.

The terms of payment as specified in the original offer,
expressing the contract governing the May orders, are stated
therein to be "sixty days acceptance." An acceptance is
defined (Century Dictionary) as follows: "In commerce,
an engagement by the person on whom a bill of exchange
is drawn to pay the bill; usually made by the person writ-
ing the word 'acceptance' across the bill and signing his
name or simply writing his name across or at the end of the
bill." There is, perhaps, some ambiguity as to whether an
acceptance in this case was to be given for each delivery or
only when all the iron has been delivered. The contract
clearly contemplated deliveries at different times during
June and July, of the iron specified in May. "Sixty days
acceptance" may mean an acceptance payable in sixty days
for each delivery, or it may mean an acceptance so payable
in sixty days after final delivery. Appellee did not ask for
acceptances for each delivery, and appellant gave none. The
matter is only important now so far as it bears upon the
claim made by appellee that it was relieved from obligation

to deliver the balance of the May iron by appellant's refusal to pay the bill for the iron which had been delivered. Whether acceptances were given or not, the bills were not payable in less than sixty days after delivery of the iron. The date of the present delivery seems to have been August 21st, and payment therefor would not be due until sixty days thereafter, whereas payment was asked for September 30th, with the statement that the bill presented, amounting to $2,636.79, "is now matured." It had not matured so far as we are able to discover from the evidence, and appellant was under no obligation to pay it until at least sixty days from the time of delivery. His failure to pay therefor can not be construed as a default on his part, and did not release appellee from further deliveries in fulfillment of the May orders. We regard the case of Harber Bros. Co. v. Moffat Cycle Co., 151 Ill. 84, as not applicable to the facts before us.

The case has been elaborately presented, both orally and in the briefs, and has received our careful consideration, although we have not deemed it necessary to consider at length every point urged upon our attention. We are compelled to regard the judgment as erroneous, and it will therefore be reversed and the cause remanded.