## Quincy Gas & Electric Company v. Bernard Bauman.

1. EVIDENCE—*Clothing Worn by Person When Injured.*—It is not error to introduce clothing worn when the injured party was injured, to illustrate the manner in which the injuries were inflicted.

2. SAME—*Of Particulars of a Conversation upon Cross-examination.*—It is not proper cross-examination to ask for particulars of a conversation where the witness has already stated the extent of his information concerning the subject of such conversation.

3. SAME—*As to Who is Liable for a Doctor's Bill.*—A witness is incompetent to state who is liable for a doctor's bill, as it is a question of law and not of fact.

4. ORDINARY CARE—*Question of Fact for the Jury.*—Ordinary care is a question of fact to be determined by the jury in each particular case, from all the facts and circumstances in evidence.

5. SAME—*In Child Over Seven Years of Age.*—Where a child has passed the age of seven years, he is bound to use such care as children of his age, capacity and intelligence are capable of exercising, and the question whether he has done so or not, should be submitted to the jury.

6. WITNESSES—*Peculiar Province to Determine Their Credibility.*—It is the peculiar province of the jury to determine the credibility of witnesses.

7. INSTRUCTIONS—*Duty of a Company Transmitting Electricity Through the Streets.*—An instruction which tells the jury that the law imposes upon a person or corporation transmitting electricity over the streets of the city for gain, the duty of so maintaining their wires and other fixtures and appliances, that they will withstand the ordinary and usual storms of all parts of the year in that section of the country in which its plant is located, is erroneous, as it charges defendant with the absolute duty of maintaining its wires so that they would withstand the ordinary and usual storms, when the law requires only ordinary care to accomplish such result.

8. PRACTICE—*Improper Remarks of Counsel.*—Reference by coun-

sel to the amounts of verdicts sustained by the courts in other cases is improper.

9. SAME—*Objections Should be Made Openly.*—Objections should be made openly, that all the parties may hear, and the court may properly disregard objections not so made. Where, however, the court has entertained the objections not made openly and stated them in the hearing of all the parties, they become a part of the record notwithstanding the impropriety.

10. DAMAGES—*Where $10,000 is Not Excessive.*—Plaintiff, an eleven year old boy, sustained the following injuries: Some thirty-three square inches in area of the skin was injured and destroyed to the extent of a burn of the third degree, which at a later date was covered by skin grafts. As a result of these injuries, at the time of the trial of the cause, the left hand of the plaintiff had the first phalange of the thumb and first finger removed and of the second finger tapered and cicatricial tissue grown on the inside of the first two fingers, extending from the ends thereof to the palm or surface of the hand; and there still remained an open wound upon the abdomen of the plaintiff of about an inch and a half in width and three inches in length. He had also lost, as a result of such injury, about two-thirds of the glans penis and about two-thirds of the left lobe of the erectile tissue of the penis, and also the left side of the scrotum. The scrotum and penis adhered to the inside of the left leg or to the scar tissue in the groin, the penis being crooked to the left, and for almost its entire length attached to the tissues of the leg or to the scar tissue in the groin. *Held,* that $10,000 damages are not excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Adams County; the Hon. JOHN C. BROADY, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

COVERT, PAPE & COVERT, attorneys for appellant.

MCCRORY & DINES and VANDEVENTER & WOODS, attorneys for appellee.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

Appellee, a boy of eleven years of age, recovered by the verdict of a jury in this case, $10,000 against appellant, for negligence in maintaining an electric wire on Adams street in Quincy in an unsafe manner, so that it fell while charged with an electric current of 2,000 volts, and remained upon the street, where appellee came in contact with it and was

there injured. The court overruled appellant's motion for a new trial and gave judgment against it upon the verdict, and to reverse the judgment appellant has brought this appeal and argued various errors as alleged, consisting chiefly that the court erred in its rulings upon the evidence and the instructions to the jury; that the verdict is unsupported by the evidence; that the damages are excessive; and the verdict was induced by improper remarks of counsel.

Appellant owned an electric light plant in the city of Quincy, and one of its wires was located on Adams street, erected three or four years before the accident to appellee. The wire was near a trolley pole of the street car company and at different times was observed to come in contact with the pole, producing an arc, or, as some of the witnesses described it, caused the pole to burn. At the top of the pole there was a bolt, or hook, with screwtap to fasten it, upon which the guy for the support of the trolley wire was suspended. The evidence shows that the electric wire was arcing at the top of the pole as far back as June 5, 1901, and that arcing will cause the wire to burn apart. On the day of the accident to appellee, July 30, 1901, the wire was seen to arc by several witnesses, and then it fell asunder, the ends upon the street. Appellee, while passing along the street, carrying a dinner basket to some workmen at the works in the city, came in contact with the live wire lying upon the street and was thus injured. Whether appellee saw the wire and voluntarily took hold of it, or stepped upon or against it, without having discovered it, was a disputed question of fact submitted to the jury.

It has been argued that the court committed prejudicial error in its ruling upon the evidence in the case, and in delineation of this it is pointed out that the court had admitted evidence that no repairs of the wire in question had been made, it not being shown that the wire was out of repair; and further that the trolley pole was erected after the wire. The word "repair" may not have described the correct needs the wire demanded, although it was in evi-

Quincy Gas & Electric Co. v. Bauman.

dence that its bad condition might have been corrected by fastening it to an insulator placed upon the trolley pole, and this we think would be included in the general term "repairs." An expert electrician was asked a question upon a certain hypothesis, including the supposition the wire was not insulated, which elicited an answer that contact with the pole would cause an arc, and that arcing would burn off the wire; and the objection to the question was, that there was no evidence upon which to base the supposition that the wire was not insulated. We think the fact of arcing was sufficient from which to infer the other fact, that the insulation had fractured, or was imperfect, before that time; and the ruling of the court was therefore proper. The same witness was inquired of, if it was a proper way to suspend a wire, so near a trolley pole as to come in occasional interference, to which objection is taken upon the ground that the wire was placed before the pole was put there. Even if this were true, it had been there for nearly eight weeks at least, and this in effect supported the question. The little trousers the boy had worn when he was burned were introduced before the jury, to which objection was made. It is the common practice to exhibit objects of this kind in trials like this, to illustrate the manner in which the injuries were inflicted, and in the ruling of the court in this regard there was no error.

Upon the cross-examination of appellee he was induced to say that he had been told by others, the nature, power and effect of electricity; and in this connection had stated that a cousin had told him about getting shocked by touching a wire. The object of the cross-examination was pertinent to show the knowledge of appellee concerning the wires. Appellant sought to go into the details of time, place and circumstances of the conversation with the cousin, to which the court sustained objection; and this is argued for prejudicial error. The court properly ruled, for the reason that the particulars of the conversation were not proper cross-examination, the witness having already stated the extent of his information concerning the nature of the

electric current.   The doctor who attended upon appellee, and treated him for the injuries received, testified that his bill for services was $459; and because on cross-examination the court refused to let him answer who was responsible for its payment, appellant insists that such ruling of the court is prejudicial error.   It was immaterial who, besides appellee, might be liable to the doctor for his bill; the appellee, although an infant, was legally liable to the person who caused necessary services to be rendered him under the circumstances, whether it was the doctor himself or another person.   Besides, the question was one of law and not of fact, to answer which the witness was incompetent.   There was therefore no error in such ruling.

The next point argued is that the verdict is unsupported by the evidence; that appellant is not guilty of the negligence imputed to it, and the injury was the result of appellee's own contributory negligence.   There can be no negligence within the legal meaning of the term, except where the degree of care required by law has not been given.   The appellant in the present case was, by the law, charged with ordinary care in the erection and maintenance of its wire, by which it conveyed over a public street a dangerous current of electricity.   Ordinary care is a question of fact to be determined by the jury in each particular case, from all the facts and circumstances in evidence.   The care to be bestowed in every case, to arise to the degree of ordinary, must be commensurate to the danger of the injury to be avoided, and such as generally shown by average, good business men of the same class, and especially such as they usually bestow upon their own protection under similar circumstances.   Ordinary care employed in the storage and keeping of dynamite and other dangerous explosives, if used in the care of food stuffs, would be considered utmost care, and of no utility; and this, we think, illustrates what is meant when it is said that ordinary care must be commensurate to the danger to be avoided.   The care and the danger should measure one to the other; and so it is in every condition that may present itself, and yet

the care is but ordinary.   Appellant was bound to employ all ordinary means used by others of its class having charge of machinery or apparatus, liable, by its use and by lapse of time, to become defective, weakened or out of repair, and in consequence thereof dangerous to the lives and property of persons.   All know from observation and experience, that in the use of steam as a motive power, an effective system of inspection of boilers and other apparatus is ordinarily adopted and practiced, to the end that security in the use thereof may be reasonably insured.   Whatever, in the very nature of things, reason and common sense would suggest as a requirement for reasonable safety in the use of instruments, powerful and dangerous by nature and destructive to life and property in the absence of care, ordinary and reasonable minds would agree ought to be supplied.   Effective rules of inspection adopted and practiced with ordinary care to discover and amend the danger points in electrical systems, would and ought to be considered ordinary care.

To apply these general principles to the present case, and thereby endeavor to reach a proper conclusion, let it be admitted that in the first instance appellant's wire, by which it conducted a powerful and dangerous electric current, was of the best material and properly insulated, and placed in a safe way and position.   The evidence tended to show it had been erected three or four years before the accident.   It was testified by appellant's witnesses that inspection of the wire had been made several times between June 5th and July 30th, the last a week before the latter date.   One witness, Preston, said the wire cleared the trolley from eight to ten inches, and was even with the top of the pole; and that the effect the wind would have upon the wire depended upon the length of slack there was in it; that at this particular point, where the trolley pole was, the wind would blow the wire ten or twelve inches. Another witness, Hessler, testified he was foreman of lamps and wires, and was at this pole a week or two before the accident, and at that time the wire was from five to eight

inches north of the pole, and on a level or a little higher than the top of it. We have it then from appellant's own witnesses, who were charged with the duty of inspection, that for at least a week before the injury to appellee they had discovered the wire was within five to ten inches of the top of the pole, and upon a level with it, and that the wind would blow the wire ten or twelve inches. This evidence therefore proves that the wire was, or would be in contact with the pole whenever the wind blew, and that appellant knew it. The undisputed evidence is that the wire was in contact with the pole June 5th, and occasionally afterward, until and on the day of its fall, and that at those times it was arcing. Appellant therefore knew the wire was in bad condition, and must be held to the knowledge that it was arcing and would burn apart and fall, as it did. It was endeavored to break the force of this, by showing the accident was the result of a storm; that the wind caused the branches of trees to fall upon the wires at other points, and by this means the wire at this point was drawn taut and the slack taken up. This, however, refutes itself; for if the slack had been taken up, the wind could not have blown the wire against the top of the trolley pole, as it did, whereby it was burned apart and fell. Appellant did not use ordinary care, or even slight care, to put the wire in safe condition, after it knew it was in contact with the trolley pole whenever the wind blew. In fact it used no care whatever; it did nothing. Men must be held to intellectual honesty to see the things that are plainly given them to see. It is no excuse to say, as has been said, that the trolley pole was erected after the wire was hung. In the course of time, by the growth of trees, the erection of houses and other improvements in a populous city, it is within the observation of all that changes occur, which in their natural effect bring objects nearer together, thus requiring ordinary vigilance of those having charge of electric light wires within the city limits, to see that there is no contact by which injuries like the one we are considering, may be wrought. All that was necessary was to

look at the wire and pole to make the discovery that they were in contact—for such is the undisputed fact. We feel well justified in the opinion that the jury was warranted in finding, as they did, that appellant was negligent in all respects averred against it.

It is argued that because appellee knew the wire was down upon the street, and voluntarily took it into his hands, knowing its dangerous quality, that he was guilty of contributory negligence. If the insistence of appellant could be admitted, as broadly stated, there would be much force in the position. The fact that appellee did take hold of the wire was contested upon the trial. He testified he had no recollection of anything from the time he was upon Adams street, until after he was conscious of being at the hospital, where he was taken after his injury. A companion boy, it is true, testified that appellee expressed wonder whether the wire would shock him, and then took it in his hand, and was thus injured. The credit of this witness was a material fact for the jury to decide. Some of the facts and circumstances on the trial tended to contradict him, and the reasonableness of his statement was a question also for the jury. The jury doubtless refused to credit his statement, which we are impressed contains many elements of unreason, especially so if appellee possessed the knowledge relative to the dangerous nature of electricity, that appellant attributes to him. It would be an unnatural act for a person having the knowledge appellant supposes this boy possessed, to take hold of a live wire. If he did not know the danger, then he was not guilty of contributory negligence; for we are not required to presume negligence on the part of this boy to excuse negligence on the part of appellant. To put the case as strongly as we think it susceptible in appellant's favor, upon this point the evidence, when considered as a whole, was conflicting, and its proper decision depended upon the credit to be given appellant's witness. The jury saw and heard him, and it was their peculiar province to determine his credibility. They evidently did not believe his statement, and we are unwilling to say

they were unwarranted in this and that their finding in this regard was wrong. Apart from this testimony, the jury were warranted in finding that appellee stepped upon or ran against the loose end of the wire, where it laid in the street, without having discovered it, and this we think the most reasonable conclusion from a consideration of all the evidence; and if this was true there can be no just inference of contributory negligence, for he had the right to presume that the street was free from a danger like that. While there was evidence of a rain and wind storm that morning, the storm had placed no obstructions on the street at that point, and was in no way the cause of the fall of the wire, that having been produced alone by arcing, in consequence of its contact with the trolley pole. Appellee had no occasion, or notice, to be especially watchful for obstructions in the street.

What is or is not negligence and ordinary care being a question of fact to be determined by the jury, the numerous authorities cited by counsel have not been reviewed in the opinion upon this point, for such a work would be of no practical utility.

It is complained that the court erred in its instructions to the jury given at the instance of the plaintiff; and extended argument is produced to prove that the following instructions were erroneous:

" The court instructs the jury that a boy of eleven years of age is only required to exercise that degree of care and caution which boys of his age, capacity, intelligence and experience may reasonably be expected to use under like circumstances; and if the jury believe from the evidence that the plaintiff was just before and at the time of receiving his alleged injuries exercising such care, then the plaintiff was exercising all the care the law required of him.

The court instructs the jury that a child eleven years old is required to use such care only as is usually exercised by children of the same age and degree of intelligence under like circumstances."

The counsel in their argument say that the giving of instructions embodying these general principles would not in many cases work injury, or be erroneous, and that it

would manifestly not be error to apply these general principles to the particular plaintiff in the case whenever there is no evidence as to the infant plaintiff having special knowledge or capacity; and they disclaim the purpose to question the correctness of the instructions, as a general proposition of law. The specific objection pointed out, however, is, as argued, that the instructions ignore the fact, as it is assumed, that the plaintiff was exceptional in his knowledge and information, as compared with the average boy of his own age, and that the instruction is limited by its terms to the ordinary or average person of the particular age specified. If it be admitted that the plaintiff was exceptional in this respect, or it is a sufficient statement for this purpose to say that was a question for the jury to decide, then it is important to see if the instruction is subject to the criticism put upon it. The instruction, as we think, requires of the plaintiff the care expected of or exercised by persons of his age, capacity, intelligence and experience. Does the instruction then ignore the special knowledge, intelligence or experience, that counsel insist was possessed by the boy? We think the instruction will not justly bear that construction. If the plaintiff possessed the knowledge of an educated electrician, we are of the opinion the words of the instruction would have included him and others with like qualifications. It is true the average boy, as we know, possesses no such qualifications, but the instruction does not describe an average person of that age, only boys of his age, capacity, intelligence and experience. Whether such qualifications were little or great was left an open question for the jury to decide. These instructions are consistent with the rule prescribed in City of Pekin v. McMahon, 154 Ill. 141, and other cases, where it is said, where a child has passed the age of seven years, he is bound to use such care as children of his age, capacity and intelligence are capable of exercising, and that the question whether he has done so or not, should be submitted to the jury. In Illinois Iron and Metal Co. v. Weber, 196 Ill. 526, it is said:

" The rule established by our own decisions is that age is not the only element to be considered, but that intelligence, capacity and experience are also to be taken into account." Citing Weick v. Lander, 75 Ill. 93; City of Chicago v. Keefe, 114 Ill. 222; Railroad Co. v. Slater, 129 Ill. 91.

So when these instructions are tested by the latest expression of our Supreme Court, it is found they are without fault.

At the instance of the plaintiff the court also gave the following instruction:

" The court instructs the jury that the law imposes upon a person or corporation transmitting electricity over the streets of the city for gain, the duty of so maintaining their wires and other fixtures and appliances, that they will withstand the ordinary and usual storms of all parts of the year in that section of the country in which its plant is located."

The objection made to this instruction is that it charges appellant with the absolute duty of maintaining its wires so that they would withstand the ordinary and usual storms, when the law requires only ordinary care to accomplish such result. The point is well taken, for it is the familiar law that only ordinary care is required in such cases, and it only remains for us to see if this instruction contains prejudicial error. Upon the evidence in the case it can not be maintained the wire was broken as the result of a storm; it was burned apart by arcing, and hence the instruction had no application to any material issue in the case; and although erroneous, such error was without prejudice. Besides this, upon the evidence, there can be no just inference that appellant used any decree of care—not even the slightest—to put its wire in a safe condition; and for this reason the instruction would not be harmful, even had it covered a material point.

Again, the following instructions were given for the plaintiff, to which exception was taken:

" The court instructs the jury that a person or corporation engaged in the business of generating and transmitting currents of electricity, for gain, over the streets and sidewalks of a city by means of wires suspended above the surface of such streets and sidewalks, is bound to take such

care of its wires to prevent them from breaking and falling to the surface of the street or sidewalk, as an ordinarily prudent and careful person would take of property of similar character under like circumstances and conditions. If the danger that would accompany the breaking and falling of the wire would be great, the care required to prevent the same would be correspondingly great; that is, the care should be commensurate with the danger."

" The court instructs the jury that a person or corporation engaged in a business dangerous to the lives or limbs of persons lawfully attending to their own affairs or business, must exercise care and caution in conducting its business commensurate with the danger, and as the danger increases the care and caution to prevent or avoid injury from such danger must also proportionately increase."

What we have already said in another part of this opinion concerning ordinary care answers the objection to these instructions. They do not set up, as argued, a greater degree than ordinary care, but simply require the care to be commensurate to the danger to be avoided; that the one should measure to the other. If ordinary care did not arise to a standard like this, it would be a mere delusion. This statement of what ordinary care includes, is supported by the following language of the Supreme Court:

" What is ordinary care depends upon the circumstances of the particular instance. When the circumstances are such that an ordinarily careful and prudent person would deem it essential to exercise a greater degree of care and caution than upon less threatening circumstances, such greater degree of care would be but ordinary care. The test always is, not that the highest possible care and caution shall be exercised, but such degree of care only as an ordinarily careful and prudent person would exercise in a like situation." Chicago St. Ry. Co. v. Manning, 170 Ill. 417.

Again in Alton Illum. Co. v. Foulds, 190 Ill. 367, it was said, that in undertaking to deliver so dangerous an element as electricity, " great care and caution should be observed—such a degree of care and caution as is commensurate with the danger." Also in N. Y. C. & St. L. R. R. Co. v. Luebeck, 157 Ill. 595, " if they made the crossing more dangerous, appellant was bound to exercise a degree of care commen-

surate with. this danger." It is also complained the court erred in instructing the jury to the effect, as it did, that if the plaintiff had proved the case as laid in the first two counts of the amended declaration, or either of them, then to find the issues for the plaintiff. By reference to the counts mentioned, we find the cause of action stated sufficiently there, both in respect to the negligence of the defendant and the care of the plaintiff. In Mt. Olive Coal Co. v. Rademacher, 190 Ill. 542, it was said :

" An instruction which tells the jury that if they believe from the evidence that the plaintiff has proved his or her case as laid in his or her declaration, or in either count thereof, then they will find the issues for the plaintiff, has been held by this court to be unobjectionable, in a number of cases;" citing Pennsylvania Co. v. Marshall, 119 Ill. 399; O. & M. Ry. Co. v. Porter, 92 Ill. 437; Race v. Oldridge, 90 Ill. 250; Logg v. People, 92 Ill. 598.

There was no error in the modification of instructions so as to require of the plaintiff only such care as might be reasonably expected of a person of his age and intelligence. This was necessary in conformity with the law, as we have already pointed out. It is also argued that the damages are excessive, and that the verdict was induced by improper and prejudicial remarks of plaintiff's counsel in their argument to the jury. One of the counsel in his address to the jury said :

" You ought to find a verdict for all that we claim, because the Appellate Court in volume 91 sustained a verdict for $11,000 for a similar injury not so bad as this. In another case a small boy caught on to the rear of an express wagon, as small boys will do, but as he had no right to do; the wagon stopped, and a wagon in the rear struck him in the abdomen; damages of $15,000 awarded. A man in Chicago lost his private organs in an accident; a verdict of $25,000 was awarded and sustained. In another personal injury suit our Supreme Court sustained a verdict of $30,000 as not excessive."

Another of plaintiff's counsel in his address to the jury made this statement :

" There is John D. Rockefeller, who owns nearly every-

Quincy Gas & Electric Co. v. Bauman.

thing. However, up to the present time—mark you, up to the present time—corporations are entitled to the same rights under the law as individuals. Yet, if the signs of the times are to be believed, the day is near at hand when the people must rise up and take hold of the corporations. It is only when we throttle them with a case like this and drag them into court that they can be reached. Judge Trumbull has said within the last twenty years there has been organized in the State of Illinois over twenty-six thousand corporations for the sole purpose of avoiding individual liability."

Counsel for appellant privately objected to the court while the opposite counsel were so addressing the jury, and when the latter was informed by the court in relation to the objection to commenting upon what had been done in other cases, the counsel desisted. In reference to the remarks last above quoted, the court inquired of the counsel who made them, after the objection so privately made, if he meant thereby that the fact that the defendant was a corporation should make any difference in the verdict; to which he replied, "No; a thousand times, no." The remarks were excepted to by appellant. The court made no ruling upon them, nor did it instruct the jury orally or otherwise to disregard them, nor was it requested to do so by appellant. We are of the opinion that the reference by counsel to the amounts of verdicts sustained by the courts in other cases was improper. There was no evidence in the case upon which such statements could stand, and the subject was outside of the issues, and altogether immaterial. The other remarks were intemperate, unworthy the high character of counsel who made them, wholly without justification, and the trial court should have promptly suppressed them, even without an objection; although appellant could get no advantage without an objection. It is argued that by privately objecting to the court, as he did, the vice of the proceeding is not preserved in the record. It is true, objections should be made openly, that all the parties may hear, and the court might properly have disregarded the objections because they were not made openly. As it was, however, the court entertained the objections, and stated them in the

hearing of all the parties, and thus put them in the record. Unless we can see that the jury was improperly influenced by the remarks, and their verdict affected by them, we are not required to reverse the judgment, for the reason of the impropriety. Upon looking into the evidence, as we have already said, we find it supports both the negligence charged against appellant and due care upon the part of the plaintiff, so that the verdict is right so far as it determines those questions. Are the damages excessive, in view of the evidence? We are not so impressed. We quote the description of appellee's injuries contained in appellant's statement of the case, to prove, in our opinion, the damages are not excessive.

" Some thirty-three square inches in area of the skin had been injured and destroyed to the extent of a burn of the third degree, which, at a later date, was covered by skin grafts. As a result of these injuries, at the time of the trial of this cause, the left hand of the plaintiff had the first phalange of the thumb and first finger removed and of the second finger tapered, and cicatricial tissue grown on the inside of the first two fingers, extending from the ends thereof to the palmer surface of the hand; and there still remained an open wound upon the abdomen of the plaintiff of about an inch and a half in width and three inches in length. The plaintiff had also lost, as a result of such injuries, about two-thirds of the glans penis and about two-thirds of the left lobe of the erectile tissue of the penis, as also the left side of the scrotum. The scrotum and penis adhered to the inside of the left leg or to the scar tissue in the groin, the penis being crooked to the left, and for almost its entire length attached to the tissues of the leg or to the scar tissue of the groin."

In addition to this the evidence of the boy and also the medical testimony is to the effect that appellee is required to use a bottle or vial in micturition, and there is little doubt from all the evidence that the injuries are permanent, and that he will be incapacitated as a man to fulfill the marital relation. It is, however, theorized that at some future time surgical operations may be practical to afford some improvement over his present condition. In view of these facts, incapable of successful dispute, it is seen that the remarks

of counsel were without prejudice. If the verdict is right, as we believe, the judgment ought not to be reversed for errors unaffecting the merits.

Finding no reversible error in the record and proceedings of the Circuit Court, its judgment will be affirmed.