## W. H. GODAIR et al.

### v.

### THE HAM NATIONAL BANK.

*Opinion filed February 21, 1907.*

1. EVIDENCE—*admissibility of a telephone conversation.* In an action by a bank against a commission firm for the proceeds of drafts cashed by the plaintiff which the defendants failed to pay, a telephone conversation between plaintiff's cashier and some one in the business office of the defendants, had with reference to other drafts drawn by the same person on the defendants, in which the party talking from the defendants' business office said such drafts would be paid, is admissible, notwithstanding the witness does not know with whom he was talking.

2. INSTRUCTIONS—*when instruction is bad for singling out defendants' witnesses.* An instruction which, after defining the two methods of impeaching a witness, states that "if the jury believe that any witness for the defense has been successfully impeached by either of the methods aforesaid, then you are at liberty to disregard the evidence of such witness, except so far, if at all, as he may have been corroborated," etc., is misleading in singling out the witnesses for the defendants.

3. WITNESSES—*false testimony must have been knowingly and willfully given to give rise to impeachment.* A witness who has been contradicted upon a material matter by other witnesses, or has made statements out of court upon a material matter contrary to his testimony in court, is not necessarily impeached, unless his false testimony as to such material matter was knowingly and willfully given.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Jefferson county; the Hon. J. R. CREIGHTON, Judge, presiding.

JONES, JONES & HOCKER, and WILLIAM H. GREEN, for appellants.

H. CLAY HORNER, and ALBERT WATSON, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action of assumpsit commenced by appellee, the Ham National Bank of Mt. Vernon, against W. H. Godair, A. G. Godair and E. C. Gibson, doing business as the Godair Commission Company, and Samuel L. Moreland, in the circuit court of Jefferson county, to recover the amount of two drafts for the sum of $500 each, and interest, drawn, respectively, on November 4 and November 6, 1903, by Samuel L. Moreland, through the appellee bank, upon the Godair Commission Company and paid upon the checks of Samuel L. Moreland by the appellee, which drafts were allowed to go to protest by said Godair Commission Company for non-payment. The declaration was in the usual form, and the general issue was filed, and a trial resulted in a verdict and judgment in favor of the appellee for the sum of $1076.90, which judgment was affirmed by the Appellate Court for the Fourth District, and an appeal has been prosecuted to this court by the Godair Commission Company.

It is first contended by the appellants that the evidence does not support the plaintiff's cause of action. This court cannot weigh the evidence, and the question sought to be raised by the appellants can only arise as a question of law in this court; and it has been repeatedly held by this court that the only manner in which the question of whether the evidence fairly tends to support the plaintiff's cause of ac-

tion or the defendant's defense can be preserved for review as a question of law in this court is by an instruction, offered at the close of all the evidence, to find for the plaintiff or defendant. (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Hewitt,* 202 Ill. 28; *Chicago Union Traction Co.* v. *O'Donnell,* 211 id. 349; *Streator Independent Telephone Co.* v. *Continental Telephone Construction Co.* 217 id. 577.) As no such instruction was offered in this case, the question of law whether the evidence tended to support the plaintiff's cause of action is not preserved for review upon this record and cannot be considered in this court.

It is next contended by the appellants that the court erred in its ruling upon the admission of evidence. Samuel L. Moreland was a stock buyer and shipper in Jefferson county, and he testified that some time prior to the drawing of said drafts he entered into an arrangement with the Godair Commission Company, doing business at East St. Louis, by which it was agreed he was to purchase and ship live stock to said commission company, and that said commission company was to pay drafts drawn by him upon said company with which to obtain funds to pay for said live stock; that he communicated said arrangement to the appellee and that it agreed to cash said drafts. Mr. Pavey, the cashier of the bank, testified that Moreland had drawn numerous drafts through the appellee bank upon said commission company by virtue of the arrangement testified to by Moreland, prior to the time he drew the drafts in question, which had been paid by the commission company. Mr. Grant, a former cashier of the bank, testified that on an occasion prior to the drawing of the drafts in question, and while he was acting as cashier for the bank, Moreland desired said bank to cash certain drafts drawn by him upon said commission company for a considerable amount; that before cashing the same he called up the office of the Godair Commission Company, in East St. Louis, by telephone, and asked for Mr. Godair; that someone in the office answered that Mr. Godair was not

in; that subsequently the commission company called up the bank and said the party wanted by the bank was now in; that he thereupon talked with seomeone connected with the Godair Commission Company; that he inquired if the drafts of Moreland would be paid, as he wished to draw through the bank upon the Godair Commission Company for a sufficient amount to pay for two or three car-loads of cattle; that the party with whom he talked said the drafts would be paid; that he did not know Mr. Godair and did not recognize his voice, and could not say with whom he talked at the office of the Godair Commission Company. The testimony of Mr. Grant was objected to as incompetent. The objection was overruled and the testimony was admitted, and its admission is now urged as reversible error.

In the case of *Wolfe* v. *Missouri Pacific Railway Co.* 97 Mo. 473, (3 L. R. A. 539,) substantially the same question presented here was passed upon by the Supreme Court of Missouri. It was there sought to introduce a conversation had by telephone between a witness and some person in the business place of one of the parties to the suit. The evidence was held admissible. The court said: "When a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication, in relation to his business, through that channel. Conversations so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. The fact that the voice at the telephone was not identified does not render the conversation inadmissible." While the weight to be given to such a conversation is to be determined by the jury, we think the reasoning of the court in the *Wolfe case* satisfactory, and are of the opinion the court did not err in admitting the evidence.

It is next urged that the court committed reversible error in giving to the jury plaintiff's fifth instruction, which reads as follows:

"A witness may be impeached by the contradictory testimony of other credible witnesses upon material matters or by proof that he has made statements upon material questions out of court contrary to his testimony here, and when so impeached all of his evidence may be disregarded by the jury except where corroborated by other credible evidence; and if the jury believe that any witness for the defense has been impeached by either of the methods aforesaid, then you are at liberty to disregard, the evidence of such witness, except so far, if at all, as he may have been corroborated by other credible evidence in the case."

Two criticisms are made upon this instruction: First, that it singles out the witnesses of the defendant and particularly calls the attention of the jury to the testimony of such witnesses; and secondly, that it informed the jury that they may disregard the testimony of a witness, except in so far as he has been corroborated by other credible evidence, if his testimony upon a material matter has been contradicted by the testimony of other witnesses, or if he has made statements out of court upon material matters different from his testimony in court, without requiring the jury to believe the witness has knowingly and willfully testified falsely with reference to such material matters. The testimony upon many material points was conflicting, and the jury should have been accurately instructed. The court, by the instruction, first pointed out two methods of impeachment, and then said to the jury that if they believed that "any witness for the defense has been impeached by either of the methods" referred to, they were at liberty to disregard the evidence of such witness except in so far as the witness may have been corroborated by other credible evidence in the case. From this instruction the jury might readily have understood that in the judgment of the court there was something in the testimony of some one of the witnesses for the defense which made the application of the rules of impeachment announced by the court in the first part of the instruction especially ap-.

plicable to such witness which did not apply to the witnesses for the plaintiff or the other witnesses in the case. This should not have been done. "A court can hardly err in refusing to give any instruction which seems designed to influence a jury as to the credit to be given to particular witnesses." (*Martin* v. *People,* 54 Ill. 225.) As to the second criticism, it has uniformly been held by this court that the maxim *"falsus in uno falsus in omnibus"* should only be applied in cases where a witness has knowingly and willfully given false testimony. *Chittenden* v. *Evans,* 41 Ill. 251; *City of Chicago* v. *Smith,* 48 id. 107; *United States Express Co.* v. *Hutchins,* 58 id. 44; *Pope* v. *Dodson,* id. 360; *Gulliher* v. *People,* 82 id. 145; *Swan* v. *People,* 98 id. 610; *Hoge* v. *People,* 117 id. 35; *Freeman* v. *Easly,* id. 317; *Overtoom* v. *Chicago and Eastern Illinois Railroad Co.* 181 id. 323; *Matthews* v. *Granger,* 196 id. 164.

In *City of Chicago* v. *Smith, supra,* on page 108, it was said: "As to the eighth instruction asked by the defendant and refused, we are of opinion, under the authority of the case of *Brennan* v. *People,* 15 Ill. 511, it should not have been given. There the court say, it does not follow, merely because a witness makes an untrue statement, that his entire testimony is to be disregarded. This must depend on the motive of the witness. If he intentionally swears falsely as to one matter the jury may properly reject his whole testimony as unworthy of credit. But if he makes a false statement through mistake or misapprehension they ought not to disregard his testimony altogether. The maxim *'falsus in uno falsus in omnibus'* should only be applied in cases where a witness willfully and knowingly gives false testimony."

And in *Pope* v. *Dodson, supra,* on page 365: "The tenth instruction in the series given for appellee is palpably erroneous. It told the jury that if the witness Lovely 'has sworn falsely in any material statement' the jury might disregard her entire statement except so far as it was corroborated.

225—37

A witness cannot be discredited simply on the ground of an erroneous statement. It is only where the statements of a witness are willfully and corruptly false in regard to material facts that the jury are authorized to discredit the entire testimony. The most candid witness may innocently make an incorrect statement, and it would be monstrous to hold that his entire testimony, for that reason, should be disregarded." This statement was quoted with approval in *Matthews* v. *Granger, supra,* on page 172.

In *Gulliher* v. *People, supra,* the court instructed the jury that if they believed the defendant had "been contradicted on a material point," then the jury had the right to disregard his whole testimony unless corroborated by other testimony. The court said (p. 146) : "The instruction was clearly erroneous. When analyzed, it plainly tells the jury that 'if they believe, from the evidence, that Alfred F. Foote has been contradicted on a material point, then the jury have a right to disregard his whole testimony unless corroborated by other testimony.' This is not the law. * * * If the witness, whether defendant or otherwise, is shown, by proofs, to have sworn willfully and knowingly false on any material matter, his evidence may be rejected so far as it is not corroborated. * * * The mere fact, however, that he is contradicted as to some material matter is not enough to warrant the rejection of his evidence altogether."

In *Overtoom* v. *Chicago and Eastern Illinois Railroad Co. supra,* the court instructed the jury that "if they believe any witness has testified falsely, then the jury may disregard such witness' testimony except in so far as it may have been corroborated." In disposing of this instruction the court said (p. 330) : "A witness may have testified falsely upon some matter inquired about, from forgetfulness or honest mistake, and in such case the jury would not be authorized to disregard his entire testimony, whether corroborated or not. It is the corrupt motive, or the giving of false testimony knowing it to be false, that authorizes a jury to disre-

gard the testimony of a witness and the court to so instruct them."

We think it clear that a witness may be contradicted upon a material matter by other witnesses, or may have made statements upon a material matter out of court contrary to his testimony in court, without having testified knowingly and willfully falsely. If this be admitted, then, under the foregoing authorities, plaintiff's given instruction No. 5 must be conceded to be erroneous, and as the evidence was conflicting, and as that was the only instruction upon the subject, the giving thereof was reversible error.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*