## Mable Trapp, Administratrix, Appellee, v. Rockford Electric Company, Appellant.

### Gen. No. 5,904.

1. EVIDENCE, § 173*—*when telephone conversation admissible.* The rule that the recognition of the voice of the person talking is indispensable to the admission in evidence of a conversation over a telephone is not applicable to a conversation with a business house over the telephone of such house and in relation to the business there carried on.

2. NEGLIGENCE, § 230*—*when giving of instruction as to care required of child not prejudicial.* In an action to recover for the death of a child, the giving of an instruction for plaintiff to the effect that a boy of the age of deceased was only required to exercise that degree of care and caution which boys of his age, capacity

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

and experience may be reasonably expected to use under like circumstances, *held* not reversible error, for the reason that it omitted the element of ordinary prudence.

3. ELECTRICITY, § 26*—*when evidence offered to show no complaint was made of defective wires properly rejected.* In an action against an electric light company for the death of a child where plaintiff had introduced evidence showing that the company had been notified by telephone of the defective condition of wires, an offer by defendant to show by a witness that by the rules of defendant's office a memorandum was made of any complaints which came in by telephone and that the records of the office showed no such complaint, *held* properly rejected, it appearing that the complaint by telephone had been received by a man and there was no offer to show whether there were more than one or two men employed at the office who could have received such evidence and there being no offer to show that telephone complaints were preserved in any books.

4. ELECTRICITY, § 27*—*when recovery for death resulting from defective wire sustained by the evidence.* In an action against an electric light company to recover for the death of a child caused by his touching or taking hold of a hoisting wire attached to a pole and used in raising and lowering an arc light in a street, a verdict for plaintiff *held* sustained by the evidence.

5. DEATH, § 67*—*when verdict for death of child not excessive.* A verdict for $5,200 for loss to next of kin resulting from the death of a child, sustained as not excessive, it appearing that the boy was twelve years old, that he had been a newspaper boy in evenings earning $3.50 to $4.00 per week since he was six years old, that he gave his money to his mother and that his father was in an insane asylum.

Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed April 15, 1914.

FISHER & NORTH, for appellant.

E. D. REYNOLDS, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Arthur Trapp, twelve years and four months old, touched or took hold of the lower end of a hoisting wire attached to a pole and used in raising and lowering an arc light, operated by the Rockford Electric Company in the city of Rockford, on the evening of July 7, 1912, and received a charge of electricity which instantly killed him. He left surviving a mother, a father, who was in an insane asylum, and nine brothers and sisters. His mother was appointed administratrix of his estate and she brought this suit against the Rockford Electric Company to recover for the loss to the next of kin of the deceased. She filed a declaration, containing several counts, charging liability in various ways. There was a jury trial and a verdict and a judgment for plaintiff for $5,200, from which defendants below appeal.

It is argued that error occurred in the impanelment of the jury. Appellee's counsel put a question to a juror. That question is not in the bill of exceptions. A colloquy ensued between court and counsel as to whether appellee's counsel in questioning a juror concerning the degree of care to be required of deceased should insert the qualification of reasonable prudence. The court expressed the opinion that that qualification need not be inserted in the question and the court held that it would allow the juror to be questioned on the line he had indicated. An exception to that ruling was taken. The bill of exceptions does not show what questions were propounded, what answers were made nor whether the juror was accepted or rejected. Obviously, no error at that point is shown. The question will be discussed further in considering instructions.

North Horsman street runs north and south and Lapp court crosses it at right angles. On the north side of Lapp court and on the east and west sides of North Horsman street were two poles, owned by appellant and stationed between the sidewalk and the traveled part of the street where the ground was level. There were two cross-arms upon each pole. A cable

across the street supported an arc light in the center
of the street. Upon these cross-arms were electric
light wires and from these main wires on the lower
cross-arms of the pole at the northwest corner two
feed wires ran to the arc light. A small hoisting
wire extended from a point about four and one-half
feet above the street to a point three feet above the
top cross-arm and from there over a pulley to the mech-
anism about the arc light in the center of the street.
About three feet above the lower end of the hoist-
ing wire was an insulator. This hoisting wire was
not connected with any wire which conveyed elec-
tricity, but the obvious purpose of the insulator near
its lower end was to protect those who used the hoist-
ing wire from any accidental current of electricity
thereon. The hoisting wire was attached to the pole
by a snap or lock at its lower end. This lamp was in
a thickly-settled residence district. Many children
were accustomed to play about that corner in the even-
ings, attracted no doubt by the light. This pole at the
northwest corner was commonly used by the children
as a goal in their games. Some twenty-seven children
had been playing about there that evening, which was
Sunday, and ten or twelve were playing there at the
time Arthur was killed. He and others were playing
hide and seek. Arthur ran up to the pole, struck it
three times and thereby liberated himself from the
game, picked up a piece of tin from the street and
said he was going to play "electric man," and either
touched or took hold of the lower end of this hoisting
wire and fell dead. There is no doubt but that he re-
ceived a heavy charge of electricity, such as was used
in the night to supply the feed wires. Whether the
apparatus for conveying heavy voltage from the pole
to the lamp and the apparatus for lowering and hoist-
ing the lamp were out of repair, whether the insulation
on the feed wires had become defective and dangerous,
how the electricity passed from the feed wire to the
hoisting wire, whether the insulation on the hoisting

wire was out of repair, and whether these things were unsafe and had been so for so long that appellant should have known the fact and repaired the defect, were all questions for the jury, to be determined from the direct and circumstantial evidence introduced.

It is argued that the court erred in rulings upon evidence. Mrs. Snyder, who lived on North Horsman street a little south of Lapp court, testified that between the pole in question and the next pole south of it, the electric wires pass through trees and that the leaves of those trees, where they came into contact with the wires, had often been on fire during a period of more than a year before this accident, and that more than a month before Arthur was killed she saw them on fire and called up the electric company by telephone and was answered by a man and reported to him the fact concerning the fire communicated from said wire to said leaves. It is argued that this conversation was incompetent, as she did not recognize the voice of the person with whom she talked. There are a number of cases in the Appellate Court reports holding that a recognition of the voice of the person talking is indispensable to the admission of a conversation over a telephone. That rule, however, is not applicable to a conversation with a business house over the telephone of such house and in relation to the business there carried on. Upon this subject in a similar case the Supreme Court of Missouri, in *Wolfe v. Missouri Pac. Ry. Co.*, 97 Mo. 473, 3 L. R. A. 539, 542, used the following language:

"The courts of justice do not ignore the great improvement in the means of intercommunication which the telephone has made. Its nature, operation and ordinary uses are facts of general scientific knowledge, of which the courts will take judicial notice as part of public contemporary history. When a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication, in relation to his business, through that channel. Conversations so held are as admissible

in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. The fact that the voice at the telephone was not identified does not render the conversation inadmissible. The ruling here announced is intended to determine merely the admissibility of such conversations in such circumstances; but not the effect of such evidence after its admission. It may be entitled, in each instance, to much or little weight in the estimation of the triers of fact, according to their views of its credibility, and of the other testimony in support, or in contradiction, of it."

Our Supreme Court approved of this rule in *Godair v. Ham Nat. Bank,* 225 Ill. 572. We followed the same rule in *Snively v. Colburn,* 78 Ill. App. 93, and in *Rogers Grain Co. v. Tanton,* 136 Ill. App. 533. Appellant contends that this is the only evidence tending to charge appellant with notice of the defective conditions of the wires at said corner, but it will be seen hereafter that we find much evidence which might reasonably tend to charge appellant with notice. It was not error to admit this telephone conversation In answer to this evidence appellant called a young woman, who testified that she was an employe of appellant during the period covered by the evidence of Mrs. Snyder and that it was her duty to attend the telephone during the hours when she was at work and that she received no such complaint. Appellant also called another young woman, who testified that she was an employe in appellant's office during that period and that, to the best of her knowledge, no such complaint was received. Appellant then offered to prove by a witness that by the rules of the office of appellant, whenever a complaint came in by telephone as to any pole, wire or lamp, the party receiving the complaint made a memorandum of it and placed it on file for the heads of the department to do the repairing, and that said witness had searched the records of the office pertaining to such complaints during the time

she had been in the office, and that the records did not show such a complaint with reference to the pole, lamp or wire at the corner of these streets. It is urged that the court erred in sustaining an objection to said offer of proof. Mrs. Snyder testified that her complaint was received by a man. Appellant did not examine on this subject any man in its employ in its office. For aught that we can know, it may have had but one or two men who worked in its office and who could have received such a message, and calling such man upon the subject might have completely answered the evidence of Mrs. Snyder or might have proved her evidence true. If it had been shown that there had been a large number of men in its office during that period, who might have answered the telephone, and that some of them were where they could not now be found, perhaps the offered evidence might have been admissible; but, further, there was no offer to show that the memoranda of telephone complaints were preserved or entered of record in any book, and the offer did not exclude the destruction of them as soon as acted on. We conclude that, under the circumstances existing, the offer was properly rejected. But, if not, there was proof of so many other circumstances calling upon appellant to take notice of the condition of its wires at that street corner that we are of opinion that there was no reversible error in the rejection of this offer. Complaint is made of the argument of counsel for appellee to the jury. The court seems to have ruled with appellant on the only objection it made upon that subject, and it made no further objection and we find no reason to believe that what was said was injurious or improper.

The second instruction, given at the request of appellee, was in part to the effect that a boy of the age of deceased was only required to exercise that degree of care and caution which boys of his age, capacity and experience may reasonably be expected to use under like circumstances. It is argued that it should

have included that degree of care that an ordinarily prudent boy would exercise under like circumstances, and that the instruction was erroneous in not including the element of ordinary prudence. The question what is required of such a child has often been passed upon by our Supreme Court and the terms used have not always been exactly the same. In *City of Pekin v. McMahon,* 154 Ill. 141, the court held that a child over seven years of age was bound to use such care as children of his age, capacity and intelligence are capable of exercising. In *Illinois Iron & Metal Co. v. Weber,* 196 Ill. 526, age, intelligence, capacity and experience were held to be the requirements established by the decisions of this State, and an instruction which omitted some of these elements was held to have been erroneously given. In the two cases last cited several other earlier Illinois cases are referred to. In *Quincy Gas & Electric Co. v. Bauman,* 104 Ill. App. 600, the same instruction now under consideration was given and approved, and on appeal to the Supreme Court it was held in 203 Ill. 295, that said instruction fairly presented the law applicable to the case. In *United Breweries Co. v. O'Donnell,* 221 Ill. 334, the diligence required of the child was that which a reasonable person of his age should exercise, taking into consideration his age, capacity and discretion to avoid danger, which was qualified by other instructions, making age, intelligence, capacity, experience and ability to take care of himself the elements required. In *Lake Erie & W. R. Co. v. Klinkrath,* 227 Ill. 439, and *Fowler v. Chicago & E. I. R. Co.,* 234 Ill. 619, where the elements stated in the instruction were age, capacity and intelligence, the instructions were held erroneous because they did not include the element of experience. Supported as the instruction now before us is by these authorities, we cannot say that it was reversible error to give it. But, further, if it omitted a necessary element of prudence, as contended, yet it

did not direct a verdict, and the sixth instruction, given at the request of appellant, included the element of prudence, and the fifth and eight instructions given for appellant practically placed on the deceased the same duty to care for himself as if he had been an adult. Under the rule that the instructions are to be considered as a series, and construed together, the jury were fully instructed on this subject, even upon appellant's own view of the law. Moreover, by the third instruction, given at appellant's request, the jury were told that they should consider each and all of the instructions as one charge to the jury, and that they should give force and effect to each and all of the instructions, and that unless the preponderance of the evidence brought appellee's case within the law, as laid down by the whole series of the instructions, they should find for appellant. In this condition of the record there was no reversible error in giving the second instruction requested by appellee. Appellant complains of instructions Nos. 6, 8 and 9, given at appellee's request on the subject of damages. If No. 6 stood alone, we should regard it as questionable, as tending to allow the jury to select their own measure of damages. But these defects are covered, we think, by the eighth and ninth. The ninth told the jury that in making an estimate of the damages they were not limited to the earnings of deceased until he should arrive at the age of twenty-one, but might take into consideration every reasonable expectation such next of kin may have had of pecuniary benefits or advantages from the continuance of his life, so far as the same may be shown by the evidence. Said instructions Nos. 8 and 9 are criticized by appellant, but No. 8 is approved in *North Chicago St. R. Co. v. Fitzgibbons*, 180 Ill. 466; *Richardson v. Nelson*, 221 Ill. 254, and *Keokuk & H. Bridge Co. v. Wetzel*, 228 Ill. 253; and No. 9 is approved in *Baltimore & O. S. W. Ry. Co. v. Then*, 159 Ill. 535, and cases there cited;

*North Chicago St. R. Co. v. Johnson,* 205 Ill. 32, and *United States Brewing Co. v. Stoltenberg,* 211 Ill. 531. The two instructions requested by appellant and refused were embodied in those given at its request. We conclude there is no reversible error in the instructions.

It is contended that appellant is not liable under the proof. Many boys who played about that corner were witnesses, some called by appellee and some by appellant. It clearly appears that for a long time and perhaps for a year or more electricity had been passing down the hoisting wire and past the insulator to the end of the wire and that it had been common practice for a long time for the boys to touch or take hold of the end of the hoisting wire and receive a slight shock therefrom; that once the shock had been sufficiently strong to knock down the boy who made the experience, but whether Arthur knew that fact does not appear; that the arc light at that place had often gone out or sputtered, indicating trouble in that vicinity; that the leaves in the trees between that pole and the next had often been on fire from contact with wires. There was proof tending to show that the insulator in the hoisting wire had "broken down." There was proof tending to show that the insulation of the feed wires from the pole to the lamp had "broken down" or worn through. From all the evidence on that subject, the jury might reasonably infer that the lamp and the wires in question had long been in a defective and dangerous condition, and that appellant, in the exercise of ordinary care over so dangerous an agency, should have known thereof long prior to the death of Arthur and should long prior thereto have repaired the same. The jury might well find that appellant, by the exercise of ordinary care, should have known what all the boys in that neighborhood knew and had known for a year. One or two boys testified that deceased told them to be careful about touching this hoisting wire or they would be killed,

from which appellant argues that deceased knew the danger. One of said witnesses in cross-examination stated the matter somewhat differently. The rule in question is intended to protect children against their lack of sound judgment. The frequency with which the boys had been shocked by touching this wire and received no ill effects tended to lull them into security and to cause them to fear no actual harm therefrom. We are of opinion that the jury were warranted in finding that appellant was guilty of negligence charged in the declaration and leading to the death of appellee's intestate, and in finding that the deceased had not been guilty of any conduct which the law would impute to him as negligence.

It is said the damages are excessive. We would have been better satisfied with a smaller allowance, for this is not to compensate deceased or his pain, but relates only to the pecuniary loss to the next of kin. But Arthur had been a newspaper boy in evenings, earning from $3.50 to $4 per week, ever since he was six years old, besides attending school in the daytime, and he gave this money to his mother, and was in good health. His father was in an asylum and obviously not able to care for himself. The question how much the next of kin lost by his death is one impossible to be measured with any exactness. It depends upon what might have happened in the future if he had lived. It seems peculiarly the province of the jury to determine what sum shall be allowed, and we are not at liberty to disturb the award of the jury, unless it is so great as to indicate that it was rendered from improper motives. We do not feel warranted in saying that in this case.

The judgment is therefore affirmed.

*Affirmed.*