Anton Korch for use of Joseph Doody, Appellee, v. Indemnity Insurance Company of North America, Appellant.

Gen. No. 43,513.

Opinion filed May 29, 1946. Rehearing denied June 12, 1946. Released for publication June 13, 1946.

VOGEL & BUNGE, of Chicago, for appellant; L. H. VOGEL and FRANK H. MASTERS, JR., both of Chicago, of counsel.

DARROW, SMITH & CARLIN and LOUIS A. ROSENTHAL, all of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

On June 22, 1944 Anton Korch, while driving his automobile, injured the plaintiff, Joseph Doody. Korch was covered by a casualty insurance policy issued by

defendant, and the day following the accident he went to the office of the insurance company, reported the accident and gave a statement. Some time in August he received a letter from Doody's attorney, which he personally delivered to the claim department of the insurance company. In the meantime there had been investigations by the company and negotiations for settlement with Doody's attorney. On November 10, 1944 Doody filed suit against Korch. Summons was served on Korch by leaving a copy thereof with his daughter at their home on November 15, 1944, which she placed on his dresser without telling him about it. Korch did not see the summons until the evening of December 2, 1944, two days before the return day, which was December 4, 1944. He testified that during this time he was preoccupied and worried by his wife's serious illness and operation, and that on the day she came home from the hospital he started to open all his accumulated mail, found the summons and asked his daughter how and when it was received. He was considerably concerned because he thought that the trial was to be held on the following Monday, December 4, which was the return day, but he could not get in touch with the insurance company until Monday. Korch was a window cleaner by occupation, and on the following Monday he went to work at 7:30 in the morning, and about 9:00 o'clock when he thought the insurance company opened its office, he went to a near-by drugstore and called up Andover 3400, a number which he obtained from the telephone directory. He testified that the girl who answered the telephone said it was the Indemnity Insurance Company; that he told her his name was Anton Korch and that he wanted to talk to somebody about a summons which he had received requiring him to be in court on that day; that the girl said "Just a minute, I am going to connect you with the proper person"; that he waited a few minutes and then talked with some other person

who inquired "You got a summons?"; that he replied "Yes, my name is Anton Korch," gave the person to whom he was then speaking the number of his insurance policy and asked her "What should I do? I am late. I should be today in Court. Would you straighten those things out? I don't know how those things work. It is not my business"; that the girl to whom he was talking said "Yes, what is your name?", took it, and said that everything would be taken care of. He thereupon hung up the receiver "with satisfaction everything is settled," and returned to work.

It appears that nobody defended the suit; on January 11, 1945 an order of default was entered and on January 16, 1945 judgment was entered in favor of Doody and against Korch for $1,500, with a finding of malice as the gist of the action. Subsequently, on March 29, 1945, Korch was requested to come to the office of the insurance company, where he was interrogated by its counsel and W. K. Faust, claims manager of the company. His statement at that time was substantially the same as his testimony in the garnishment proceeding as hereinbefore related.

The garnishment proceeding against the insurance company was instituted on February 21, 1945, and a hearing had therein before the court without a jury on May 10, 1945. The garnishee defendant contended that Korch had failed to comply with a clause of the policy providing that the insured forward summons to the company. Plaintiff, as well as counsel for Korch, claimed that the company had waived this provision of the policy. The court found for plaintiff and against the garnishee defendant for the amount of the original judgment, together with interest and costs, or a total of $1,548.80. The defendant garnishee appeals from that judgment.

As the principal ground for reversal it is urged that Korch had breached a condition of the policy by fail-

ing to send the summons to the garnishee defendant, and that there was no waiver of such breach of policy conditions. It must be conceded, of course, that unless there was a waiver of the policy condition requiring Korch to deliver summons to the insurance company, Doody would not be entitled to prevail in this proceeding, and it being admitted that the summons was not delivered to the insurance company, the question presented is whether there was a waiver of that condition. We therefore revert to the testimony at the garnishment hearing touching upon the question of waiver. We have already set forth the pertinent portions of Korch's testimony with respect to the telephone conversation he had on the morning of December 4, 1944 reporting that summons had been served upon him, and asking for directions. W. K. Faust, manager of the claim department, and Edward A. Kirk, his assistant, both said that they did not talk to Korch about any summons. Kirk testified that there were four inside men and seven women in the claim department. Faust stated that only he and Kirk handled matters in suit, and that two other men in the department handled matters of compensation. Thus, in addition to the four inside men in the office, there were seven or eight women, including the switchboard operator. None of these was produced at the hearing, and nothing was said by either Kirk or Faust as to who was authorized to receive any emergency calls in case neither of them was available.

The garnishee defendant contends that Korch's purported conversation with unidentified persons was not competent to establish waiver of paragraph E of the policy, which required that the insured should immediately forward to the company every summons, etc. received by him. The authorities are divided on this question. Some of the cases hold that recognition of the voice of the person on the other end of the circuit is indispensable to the admission of the conversa-

tion over the telephone, but there is ample authority to support the contention that such rule is not applicable to a conversation with a business house in relation to the transaction of its affairs. Thus, in the leading case of *Godair v. Ham Nat. Bank,* 225 Ill. 572, the bank sued Godair Commission Company to recover the amount of two drafts drawn by one Moreland through the bank upon the company. The bank paid Moreland but the drafts were not honored by the company. The question presented was whether Godair had authorized the bank to pay the drafts drawn by Moreland. Grant, a cashier of the bank, testified that on a previous occasion Moreland had asked the bank to cash certain drafts drawn by him upon the Godair Company; that before cashing the drafts he called up the office of the Godair Company by telephone and asked for Mr. Godair; that someone in the office answered that Godair was not in; that subsequently the commission company called back and said the party wanted by the bank was then in, and that he thereupon talked with someone connected with the Godair Company; that he inquired whether the drafts of Moreland would be paid, inasmuch as he wished to draw through the bank upon the Godair Company for a sufficient amount to pay for two or three carloads of cattle; that the party to whom he talked said the drafts would be paid; that he did not know Godair and did not recognize the voice and could not say with whom he talked. Grant's testimony was objected to as incompetent, but the court overruled the objection and admitted the conversation, relying on *Wolfe v. Missouri Pac. Ry. Co.,* 97 Mo. 473, 11 S. W. 49. There it was sought to introduce conversations had by telephone with some unidentified person in plaintiffs' place of business. The court made the following observation: "The courts of justice do not ignore the great improvement in the means of intercommunication which the telephone has made. Its nature, operation and ordinary

uses are facts of general scientific knowledge, of which the courts will take judicial notice as part of public cotemporary history. When a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication, in relation to his business, through that channel. Conversations so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. The fact that the voice at the telephone was not identified does not render the conversation inadmissible. The ruling here announced is intended to determine merely the admissibility of such conversations in such circumstances, but not the effect of such evidence after its admission. It may be entitled, in each instance, to much, or little weight in the estimation of the triers of fact, according to their views of its credibility, and of the other testimony in support, or in contradiction of it." Similarly, in *Trapp v. Rockford Elec. Co.,* 186 Ill. App. 379, wherein the *Wolfe* case was again cited with approval, a telephone conversation with an unknown person was held to be admissible, and the rule for which defendant contends was held inapplicable to a conversation with a business house over the telephone in relation to the business there carried on. See also *Snively v. Colburn,* 78 Ill. App. 93; *Rogers Grain Co. v. Tanton,* 136 Ill. App. 533; *Delaney v. McNeil & Higgins Co.,* 195 Ill. App. 524; and *Cohen v. Atchison, T. & S. F. Ry. Co.,* 198 Ill. App. 174. The rule enunciated in the *Godair* case has never been overruled or modified, and has generally been followed in this State. The essence of that rule is that anyone who answers a telephone call at a place of business is presumed to speak for the company in respect to the general business carried on by such company; that a business concern, by installing a telephone to be used in the transaction of its affairs, impliedly invites the

public to make use of that means of communication which is thereby made an agency for the transaction of its business, and persons dealing with it by telephone have the right to assume that the one answering the telephone of the company is clothed with authority to transact the business conducted.

Defendant cites and relies on *Garden City Foundry Co. v. Industrial Commission,* 307 Ill. 76, and *Kimbark v. Illinois Car & Equipment Co.,* 103 Ill. App. 632, in support of its contention that a telephone conversation with an unknown person is inadmissible. We find, however, that in the *Kimbark* case the court itself drew the distinction between the admissibility of a conversation held with an unknown clerk at defendant's place of business, and the inadmissibility of a conversation tending to show that the speaker at the other end of the telephone was a Mr. Maris with whom plaintiff's agent thought he was speaking but whose voice he did not know. In the *Garden City* case the question arose as to whether there was sufficient notice of the accident, and the court held that there was not. In both cases the person calling the company asked for a particular individual whose voice he did not recognize. Moreover, both cases were decided on the evidentiary weight of the conversations and not their admissibility. In the case at bar, however, Korch called the company and did not ask for any particular person. In other words, the crux of the differentiation, as plaintiff puts it, is that in the case at bar there was a person to company call, while in the cases cited by defendant there was a person to person call and the voice at the other end in the person to person call was unrecognized. It is also significant, as plaintiff points out in his brief, that in neither of the cases cited by defendant is any reference made to either the *Godair* or the *Trapp* case or to any of the decisions therein cited, thus indicating that the courts in those cases were dealing with an entirely different set of facts.

The authenticity of Korch's purported telephone call is questioned but not seriously disputed. The court who heard the witness evidently believed his testimony, and his prior conduct gives credence to his recitation as to what happened on the morning of December 4 and to his diligence and good faith in co-operating with the insurance company. The day after the accident occurred Korch went to the office of the defendant and made a report. As soon as he received a letter from Doody's lawyer he took it to the company's office. Later when the company's attorney requested him to appear and be interrogated, he appeared on the date requested, and although he was advised by the company's lawyer to obtain counsel of his own, he answered all questions freely without seeking legal advice. His telephone call on December 4 was in keeping with his prior willingness to co-operate with the company, and we think it deserves the credence which the court gave it.

■ Defendant concedes, of course, that an insurance company may waive a condition of its policy contract providing for the forwarding of summons by the insured, and that such waiver may be made orally, but it is urged that plaintiff was unable to show that the elements of full knowledge of facts and intention to waive the policy condition were present in the case at bar. In reply to plaintiff's query "What facts did the company in the case at bar lack?" defendant replies that the insurance company had no knowledge that the suit had been filed by the injured party against defendant's insured, Anton Korch. It may be conceded that up to December 4, the company had no knowledge of the filing of such suit, but neither did Korch until he found the summons among his mail, as he states, on the preceding Saturday evening. However, Korch testified that when he talked to the first person in defendant's place of business on the morning of December 4, he stated his name, and that he wanted to talk to somebody about a summons which

he had received requiring him to be in court on that day; that when the second person answered the telephone, she first inquired "You got a summons?" and after he had answered "Yes, my name is Anton Korch," and gave the person to whom he was speaking the number of his insurance policy, he asked her "What should I do? I am late. I should be today in Court. Would you straighten those things out? I don't know how those things work. It is not my business"; that the girl then took his name and said that everything would be taken care of. It would seem to us that this conversation gave the company knowledge that suit had been filed, and if there was any uncertainty as to the nature and pendency of the suit, the clerks in defendant's office should have advised Korch to bring the summons over to the company's office forthwith. Since they failed to do so, we think the assurance given Korch that everything would be attended to, charged the company with knowledge that a suit was pending, and constituted a waiver of the requirement that summons be delivered to the company. In *North American Accident Ins. Co. v. Williamson,* 118 Ill. App. 670, and *Clark v. Pacific Mut. Life Ins. Co.,* 185 Ill. App. 580, the court held that slight evidence is sufficient to establish a waiver thereof. Plaintiff's testimony in the case at bar was sufficient to conform to this rule.

For the reasons indicated we think the finding and judgment of the circuit court should be affirmed, and it is so ordered.

*Finding and judgment affirmed.*

SCANLAN and SULLIVAN, JJ., concur.